# United States Court of Appeals
# for the Fifth Circuit

United States Courts
Southern District of Texas
FILED

*September 30, 2021*

Nathan Ochsner, Clerk of Court

No. 20-20036

United States Court of Appeals
Fifth Circuit

**FILED**

September 8, 2021

Lyle W. Cayce
Clerk

ROBERTO PEREZ, JR.,

*Plaintiff—Appellant,*

*versus*

BRYAN COLLIER, EXECUTIVE DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE; CHRISTOPHER LACOX, WARDEN; ARIJ RAMADAN, CORRECTIONAL OFFICER; JIM PITCOCK, CORRECTIONAL OFFICER; AMBER TAYLOR, CORRECTIONAL OFFICER; JAMES MCCLELLAN, SERGEANT,

*Defendants—Appellees.*

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-306

---

Before HIGGINBOTHAM, WILLETT, and DUNCAN, *Circuit Judges.*

PER CURIAM:*

Roberto Perez, proceeding pro se, sued prison officials under 42 U.S.C. § 1983, complaining in part that four officers violated his Eighth

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-20036

Amendment rights when they beat him without provocation. The district court granted summary judgment for the officers on the basis of qualified immunity. We REVERSE and REMAND.

## I.

On the morning of June 30, 2015, at the Texas Department of Criminal Justice's (TDCJ) Estelle Unit, Officer Arij Ramadan escorted Perez to the shower.[1] Perez complained that the water was "scalding hot," and asked Ramadan to lower the temperature. Ramadan refused.

What happened next is disputed. Perez claims he then asked Ramadan to call a superior officer to come turn down the water, and Ramadan angrily declined to do so. She then snatched Perez's boxers from the shower area and moved to take his shorts as well. Simultaneously, Perez grabbed at his shorts to avoid being left naked in the area. The two then entered into a brief tug-of-war over Perez's shorts. Ramadan then urged a nearby officer, Amber Taylor, to pepper spray Perez. When Taylor hesitated, Ramadan let go of the shorts and went to report what happened to Officer Jim Pitcock.

Ramadan's account differs. She claims that after she refused to lower the water temperature, Perez became aggressive and grabbed her arm. She pulled away and went to notify Pitcock.

The parties agree that Pitcock then walked to the shower to retrieve Perez, but Perez refused to leave until a superior officer was called. Pitcock contacted Sergeant James McClellan and informed him that Perez assaulted Ramadan. McClellan arrived on the scene and Perez explained his version of events. McClellan told Perez that he needed to go back to his cell, ordering

---

[1] The day before, Perez was transferred from TDCJ's Coffield Unit to Estelle for a medical appointment at John Sealy Hospital in Galveston, Texas.

2

No. 20-20036

him to submit to hand restraints. Perez complied. McClellan took Perez's right arm and Pitcock took his left.

Once again, the parties' accounts then diverge. Perez claims that McClellan began to twist his arm when walking him to his cell. McClellan then shouted "Slowdown!" and "He's resisting!" Perez claims he was not resisting or walking faster than the officers. At that point, Pitcock punched Perez in the side of his head, followed by several more punches to the head from both officers. McClellan then kneeled on Perez's back, and Pitcock drove his finger and pen into Perez's eye. Officers Taylor and Ramadan then arrived on the scene. Ramadan began punching his eye, and Taylor jumped on his legs. Pitcock then attempted to break Perez's fingers. More officers were called to the area, including Officer Thuo, who began recording with a video camera. Perez was then lifted off the floor and placed in his cell. Medical staff treated him cell-side three times that day.

In the officers' use of force reports following the incident, McClellan and Pitcock claimed that McClellan told Perez that he would need to submit to a pre-hearing detention physical because he was being charged with assaulting Ramadan. At that point, Perez became upset and began pulling away from the officers' hold and moving "in an aggressive manner." The officers then placed Perez face down on the floor until he was subdued. Additional staff arrived shortly after and relieved them. Both Taylor and Ramadan claimed in their reports that Perez was subdued in prone position when they arrived on the scene. Sergeant Gunnels arrived shortly after and took command of the situation. The officers then returned to their normal work duties.

Perez subsequently brought a § 1983 lawsuit against a number of prison officials including Correctional Officers Ramadan, Taylor, and Pitcock; Sergeant McClellan; Warden Lacox; and Executive Director of

3

No. 20-20036

TDCJ Livingston. Perez claimed that each defendant violated his Eighth Amendment rights by using excessive force and denying him needed medical care.[2] He also claimed that defendant Lacox failed to supervise his employees and investigate their constitutional violations. The defendants moved for summary judgment, and the district court granted summary judgment on each claim. Perez now only appeals the district court's summary judgement ruling as to his excessive force claims against Ramadan, Taylor, Pitcock, and McClellan.[3]

## II.

We review de novo the district court's grant of summary judgment, drawing all reasonable inferences in favor of the non-movant.[4] Summary judgment is only appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[5]

When a government official asserts a defense of qualified immunity, the burden shifts to the plaintiff to rebut that defense.[6] Still, we draw all inferences in the plaintiff's favor.[7]

---

[2] He further claimed that the defendants' conduct violated his First Amendment rights and amounted to a criminal conspiracy against him.

[3] Perez does not challenge the district court's summary judgment ruling as to any of his other claims. Perez also moves for appointment of counsel on appeal, which we deny. He has failed to show that this case is complex or involves exceptional circumstances. *See Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982).

[4] *Hyatt v. Thomas*, 843 F.3d 172, 176 (5th Cir. 2016).

[5] *Id.* at 177.

[6] *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019).

[7] *Id.*

No. 20-20036

## III.

Qualified immunity protects government officials from liability unless a plaintiff can establish (1) that a statutory or constitutional right would have been violated on the facts alleged and (2) that the right was clearly established at the time of the violation.[8]

### A.

Taking Perez's version of the events as true, the officials' conduct violated his Eighth Amendment rights. Perez's excessive force claim properly falls under the Eighth Amendment. The Due Process Clause of the Fifth and Fourteenth Amendments protect pretrial detainees from the use of excessive force.[9] After conviction, the Eighth Amendment becomes the primary source of protection for excessive force claims.[10] A claim of excessive force under the Eighth Amendment requires an inmate to show that the force by a prison official was applied "maliciously and sadistically to cause harm" rather than applied as "a good-faith effort to maintain or restore discipline."[11] Force beyond that reasonably required to maintain or restore discipline is "wanton and unnecessary."[12] This standard looks to an official's subjective intent to punish.[13] And, in determining this intent, we consider the well-known *Hudson* factors: (1) "the extent of injury suffered by an inmate,"

---

[8] *Saucier v. Katz*, 533 U.S. 194, 201 (2001). However, a court may grant qualified immunity on the ground that the right was not clearly established without first inquiring into whether there was a constitutional violation. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[9] *Bell v. Wolfish*, 441 U.S. 520, 535–39 (1979).

[10] *Whitley v. Albers*, 475 U.S. 312, 327 (1986).

[11] *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).

[12] *Id.* at 7.

[13] *Waddleton v. Rodriguez*, 750 F. App'x 248, 253 (5th Cir. 2018).

No. 20-20036

(2) "the need for application of force," (3) "the relationship between" the need for force and the amount of force used, (4) "the threat reasonably perceived by the responsible officials," and (5) "any efforts made to temper the severity of a forceful response."[14] Because of the multi-factorial inquiry required, "[e]xcessive force claims are necessarily fact-intensive."[15]

The district court determined that Perez failed to create a genuine factual dispute regarding the defendants' use of force because he only offered conclusory allegations supported by conclusory evidence. This finding was erroneous. Both Perez and the defendants supported their version of events with competent summary judgment evidence. Perez relied on his sworn affidavit and contemporaneous grievance forms he filed with TDCJ. The defendants relied on their use-of-force reports. Both relied on photographs taken immediately after the use of force and Perez's medical records as evidence of Perez's injuries.

Although the district court discounted Perez's evidence as self-serving, declarations made under the penalty of perjury are competent summary judgment evidence.[16] In other use-of-force cases, we have recognized that a self-serving affidavit may be enough to create a factual dispute.[17] Here, Perez's reported grievances with medical staff, sworn declarations, and medical records likewise create a genuine dispute. The use

---

[14] *Hudson*, 503 U.S. at 6–7.

[15] *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).

[16] *Chacon v. York*, 434 F. App'x 330, 332 (5th Cir. 2011).

[17] *See, e.g., McCoy v. Alamu*, 950 F.3d 226, 229 (5th Cir. 2020) (an inmate who supported his excessive force claim with his own allegations and declarations of witnessing inmates provided competent summary judgment evidence), *vacated on other grounds*, 141 S. Ct. 1364, *remanded to* 842 F. App'x 933 (5th Cir. 2021) (per curiam). *But see Waddleton*, 750 F. App'x at 254 (an inmate's allegations were conclusory when the inmate's allegations directly contradicted the use of force depicted in a video capturing the incident).

6

No. 20-20036

of force against Perez was not captured on video. No other inmates witnessed the use of force. And the injuries depicted in these photographs are not inconsistent with Perez's allegations. Perez alleged that he suffered discoloration of his eye, vision loss, headaches, and back pain as a result of the officials punching him, gouging his eye, and applying force to his fingers. Photographs included in his medical records reveal that Perez suffered from a cut near his eye, eye swelling, and swelling and redness of his fingers. Perez's account is both specific and consistent with his grievances and medical record. Thus, Perez's allegations are not conclusory, and the court must accept Perez's version of the facts as true at this stage.[18]

Viewing the facts in the light most favorable to Perez based on his competent summary judgment evidence, he has shown that the defendants violated his Eighth Amendment rights by using excessive force. A jury could reasonably find that Perez suffered from eye discoloration, loss of vision, headaches, and pain as a result of the defendant's use of force; that there was no need for the application of force because Perez was not resisting; that the defendants did not reasonably perceive a threat by Perez at the time of the incident; and that the defendants failed to temper the severity of their

---

[18] *Bourne*, 921 F.3d at 492–93 ("Bourne and defendants offer competing versions of what occurred during the use of force and whether defendants applied force after Bourne stopped resisting and was restrained. Defendants assert that Bourne resisted, thus requiring the use of force in a good faith effort to maintain or restore discipline, a contention that is supported by the defendants' yelling 'stop resisting' in the video recording. But Bourne opposes those characterizations with his own sworn declaration and the unsworn declarations of other inmates, asserting that because he was restrained and not resisting, the use of force was malicious and sadistic for the very purpose of causing harm. The video does not resolve the dispute, so there remains a genuine dispute of material fact.").

No. 20-20036

forceful response. Thus, each of the *Hudson* factors weighs in Perez's favor such that he has shown a violation of his Eighth Amendment rights.[19]

The defendants persist that Perez failed to show a violation of his Eighth Amendment rights, because even viewing the evidence in the light most favorable to him, he has only shown de-minimis injury. But the Supreme Court has squarely rejected a threshold requirement of a significant or non-de-minimis injury.[20] "[A]s long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force."[21] In other words, while the extent of injury is a factor in determining "whether the use of force could plausibly have been thought necessary in a particular situation,"[22] "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts."[23]

## B.

Accepting Perez's version of the facts as true, he has shown that the defendants violated clearly established law. While there does not have to be

---

[19] *See also id.*(An inmate's own declarations and unsworn declarations of other inmates were enough evidence to create a genuine issue of fact as to whether the defendants used excessive force.); *Chacon*, 434 F. App'x at 333 (an inmate's allegations created a factual dispute as to whether the officer used excessive force and made qualified immunity inapplicable at summary judgment).

[20] *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

[21] *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (quoting *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013)) (internal quotation marks removed).

[22] *Wilkins*, 559 U.S. at 37 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1985)) (internal quotation marks removed).

[23] *Id.* at 38.

No. 20-20036

a case directly on point for a right to be clearly established,[24] here caselaw was clear at the time of the incident. Prison officials "may not 'use gratuitous force against a prisoner who has already been subdued.'"[25] Under Perez's version of the facts, he was handcuffed and complying with the officials' orders to return to his cell when they punched him, gouged his eye, and twisted his fingers. All reasonable officials in these circumstances would have known that this conduct violated Perez's Eight Amendment rights.[26] Because the defendants were on notice at the time of the incident that their conduct violated clearly established law, they are not entitled to qualified immunity.

## IV.

We REVERSE and REMAND the district court's grant of summary judgment as to Perez's excessive force claims against defendants Ramadan, Taylor, McClellan, and Pitcock.

---

[24] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

[25] *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016) (quoting *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002)).

[26] *See Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001).